# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

M.J. No.: 05M-1049-JGD

**LUIS RIOS-COLON**
**(a/k/a Junior)**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **June 9, 2004, September 2, 2004, September 28, 2004, December 16, 2004, and February 9, 2005** in **Suffolk** County and elsewhere in the District of

**Massachusetts** , defendant did, (Track Statutory Language of Offense)

**Possess with intent to distribute and distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance,**

in violation of Title __21__ United States Code, Section __841(a)(1)__ .

I further state that I am a **Special Agent - DEA**
Official Title

and that this complaint is based on the following facts:

**Please see attached Affidavit of Special Agent Matthew Deignan.**

Continued on the attached sheet and made a part hereof:    [x] Yes    [ ]No

Signature of Complainant
Matthew M. Deignan
Special Agent - DEA

Sworn to before me and subscribed in my presence,

**February 28, 2005**
Date

at **Boston, Massachusetts**
City and State

**Judith G. Dein,**
**United States Magistrate Judge**
Name and Title of Judicial Officer

Signature of Judicial Officer

## **AFFIDAVIT OF SPECIAL AGENT MATTHEW DEIGNAN**

Special Agent Matthew M. Deignan deposes and states as follows:

### I.    **INTRODUCTION**

1.    I am a Special Agent with the United States Drug Enforcement Administration ("DEA").    I have served in this capacity for over 14 years and am currently assigned to the Boston, Massachusetts Divisional Office.    During my tenure as a Special Agent, I have worked on dozens of drug investigations.    I have conducted surveillance of controlled purchases of narcotics by agents acting in an undercover capacity and confidential informants on numerous occasions and I, acting in an undercover capacity, have also participated in controlled purchases of narcotics.    I have written and/or participated in the execution of numerous search warrants resulting in seizures, including large quantities of controlled substances:    large amounts of United States currency, ledger books, bank records, telephone books, receipts, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances.    The information contained in this affidavit was either observed by me or related to me by other law enforcement officers involved in this investigation.

1

2.    I am submitting this affidavit in support of an application for a criminal complaint charging Luis RIOS-COLON, a/k/a JUNIOR (hereinafter referred to as "the Target Subject") with possession with intent to distribute and distribution of heroin, in violation of 21 U.S.C. § 841(a)(1).

3.    This affidavit includes a summary of events that I am personally familiar with as well as the observations and knowledge related to me by other DEA agents, officers of the Boston Police Department, and other law enforcement personnel who have been working on this investigation.   This affidavit does not set forth all the facts developed during the course of this investigation.   Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that the Target Subject has committed the aforementioned crimes described within the attached Criminal Complaint.

## II.   TARGET SUBJECT (LUIS RIOS-COLON, a/k/a JUNIOR)

4.    A check of Massachusetts Registry of Motor Vehicles records, phone records, and law enforcement databases show a residential address of 17 Creesy Street, Marblehead, Massachusetts, a mailing address of 1037 River Street, Hyde Park, Massachusetts, a year of birth of 1978, and a Social Security number ending with the digits 5984 for RIOS-COLON (a/k/a

2

"Junior").    As  discussed  in  more  detail  below,  RIOS-COLON
distributes heroin in the Boston area.

### III. BACKGROUND OF INVESTIGATION

5.    In April 2004, DEA received information from a
confidential source ("CS") that Junior (later identified as RIOS-
COLON) was distributing cocaine and heroin.  A DEA agent acting
in an undercover capacity ("UC") was introduced by the CS to
RIOS-COLON as a drug customer during an April 14, 2004 heroin
transaction.  Following that transaction, on April 21, 2004, the
UC and RIOS-COLON met for the purposes of a heroin purchase by
the UC.    The UC, however, aborted this transaction when RIOS-
COLON indicated when they met that day that they had to go to
another location for RIOS-COLON to retrieve the heroin.  Although
the UC (along with the CS) received heroin delivered by RIOS-
COLON's brother, Jonathan, on April 22, 2004 and May 14, 2004,
the UC did not meet directly with RIOS-COLON again until June 9,
2004.

### IV.  PROBABLE CAUSE FOR COMPLAINT AGAINST RIOS-COLON

#### A.   TRANSACTIONS WITH RIOS-COLON

#### June 9, 2004 Transaction

6.    On June 8, 2004, the UC placed a consensually
recorded telephone call to RIOS-COLON at (617) 905-2489 to

3

arrange a meeting to purchase 10 grams of heroin from RIOS-COLON. The two agreed to meet the next day at 12:00 noon.

7.   On June 9, 2004, the UC placed a consensually recorded telephone call to RIOS-COLON at (617) 905-2489 to confirm their agreement to meet that day. The UC and RIOS-COLON agreed to meet at approximately 1:30 p.m. at the MBTA station on Massachusetts Avenue in Boston, Massachusetts.

8.   At approximately 2:25 p.m. on June 9, 2004, the UC received a telephone call from RIOS-COLON, who stated that he was at the MBTA station waiting for the UC. The UC replied that he would be arriving in a few minutes.

9.   Approximately five (5) minutes later, surveillance was established in the vicinity of the MBTA station on Massachusetts Avenue in anticipation of the purchase of 10 grams of heroin from RIOS-COLON. At approximately 2:33 p.m., a surveillance agent dropped off the UC at the corner of St. Botolph Street and Massachusetts Avenue.

10.   The UC arrived at the train station, on foot, at approximately 2:35 p.m. Surveillance agents observed the UC[1] meet with a dark-skinned male wearing a gray T-shirt and a green baseball cap, later identified as RIOS-COLON. RIOS-COLON asked

_____

[1] This transaction and all subsequent transactions between RIOS-COLON and the UC were monitored and recorded.

4

the UC where his car was.  The UC responded that he did not have his car.  RIOS-COLON and the UC then walked toward the rear of the MBTA station, where RIOS-COLON stated that he had to urinate. The UC observed RIOS-COLON unzip his pants, at which point the UC turned away.  RIOS-COLON made a sound and the UC turned and saw RIOS-COLON reach into his sock and remove a napkin wrapped in duct tape.  After handing RIOS-COLON $1000.00 in serialized funds, the UC removed a knife from his pocket and cut into the plastic baggie, which contained a light brown substance that purported to be heroin.  The UC then departed the area. Surveillance agents observed the UC walk away from the train station, back toward the area where the agents initially dropped him off, while RIOS-COLON walked in the opposite direction on Massachusetts Avenue.

11.  Moments later, the UC received a telephone call from RIOS-COLON, who stated that it was too dangerous to meet on the street, and that next time, the UC must bring a vehicle.

12.  Surveillance followed RIOS-COLON on foot on Massachusetts Avenue to the corner of Tremont Street, where, at approximately 2:42 p.m., RIOS-COLON entered the passenger side of a black 1997 Ford F-150 pickup truck, bearing Massachusetts

Registration 49NY28.[2]  Surveillance agents noted that the pickup truck was parked in front of Boston Check Cashers at 781 Tremont Street, Boston, Massachusetts.  At approximately 2:54 p.m., surveillance observed a dark-skinned male exit Boston Check Cashers and enter the driver's side of the pickup truck. Surveillance then observed the pickup truck pull into traffic heading toward Huntington Avenue, Boston, Massachusetts, at which point surveillance was terminated.

13.  Analysis by the DEA Northeast Regional Laboratory determined that the substance that RIOS-COLON sold to the UC on June 9, 2004, consisted of 10.0 grams of heroin.

14.  On June 10, 2004, the UC received a telephone call from RIOS-COLON, who asked the UC if he was interested in purchasing some "white" from RIOS-COLON. The UC understood RIOS-COLON to use the term "white" as a street-name for cocaine.  The UC therefore asked RIOS-COLON if he was referring to "sniffy" (powder cocaine) or "smoky" (cocaine base).  RIOS-COLON replied that he was referring to "sniffy."  The UC then stated that he was not interested.

---

[2] Massachusetts Registration 49NY28 is registered to Lourdes Guerrero at 1407 Commonwealth Avenue, Apartment B1, Brighton, Massachusetts.  Guerrero has been identified as the mother of RIOS-COLON and Jonathan.

**September 2, 2004 Transaction**

15.   On September 1, 2004, the UC placed a consensually recorded telephone call to RIOS-COLON to arrange a meeting to purchase 10 grams of heroin from RIOS-COLON for $900.00.   The UC and RIOS-COLON agreed to meet the next day, September 2, 2004, at the Back Bay MBTA station on Dartmouth Street, Boston, Massachusetts.

16.   On September 2, 2004, the UC placed several consensually recorded calls to RIOS-COLON to discuss their meeting.   During these calls, RIOS-COLON and the UC agreed to meet at the Back Bay MBTA station at 3:00 p.m.

17.   On September 2, 2004, at approximately 3:10 p.m., surveillance was established in the vicinity of the Back Bay MBTA station in anticipation of the purchase of 10 grams of heroin by the UC from RIOS-COLON.   Surveillance agents followed the UC, who drove to Dartmouth Street and parked across the street from the MBTA station.   Surveillance agents observed that RIOS-COLON was standing in front of the MBTA station, wearing a green shirt and jeans and carrying what appeared to be a newspaper in his left hand.   Surveillance watched RIOS-COLON cross Dartmouth Street and enter the UC's vehicle, at which point the UC pulled into traffic and drove in an easterly direction on Dartmouth Street toward Columbus Avenue, Boston, Massachusetts.   Surveillance then

7

observed the UC's vehicle turn right outbound on Columbus Avenue and pull over to the side of the road after driving a short distance down Columbus Avenue.

18. The UC observed RIOS-COLON reach into the area of his lower left leg. RIOS-COLON then handed the UC a light brown cylindrical object purported to be heroin. The UC handed RIOS-COLON $900.00 in serialized funds, then asked RIOS-COLON if he could get an additional 10 grams of heroin. RIOS-COLON stated that he could get the additional heroin for the UC, but that he could not deliver it until later in the day. The UC stated that he needed the heroin sooner and could not wait that long. The UC told RIOS-COLON that he had been arrested for reckless operation of a motor vehicle and speeding, and that he needed a lawyer to represent him in East Boston District Court. RIOS-COLON replied that he also had a case in East Boston District Court and that he would call the UC later with the name and telephone number of his attorney. At this point, RIOS-COLON exited the UC's vehicle and departed the area.

19. Surveillance agents observed RIOS-COLON exit the UC's vehicle at approximately 3:15 p.m., after which he walked inbound on Columbus Avenue toward the Back Bay MBTA station. Surveillance observed that RIOS-COLON talked on a cell phone as he walked. At approximately 3:19 p.m., surveillance agents

8

observed RIOS-COLON reach the Back Bay MBTA station, where he entered the back seat of a white 1998 Lincoln Town car bearing the Massachusetts Registration K70828.[3]

20.   After RIOS-COLON entered the Lincoln, surveillance agents observed the vehicle pull into traffic and drive toward Columbus Avenue.   After losing sight of the Lincoln for a short period, surveillance agents observed the Lincoln pull into a Sunoco gas station on the corner of Columbus Avenue and Massachusetts Avenue.   After observing a heavy-set Hispanic male pump gas into the Lincoln, surveillance agents observed the vehicle pull into traffic and drive to Blue Hill Avenue, where the vehicle pulled over in front of the Roxbury Energy Gas station.   At this point, surveillance agents observed RIOS-COLON exit the Lincoln and wave to somebody.   A stocky, balding Hispanic male, wearing a black shirt and jeans and carrying a black bag, approached the Lincoln and joined RIOS-COLON in the back seat.   The Lincoln then pulled back into traffic.

21.   Approximately one (1) minute later, surveillance agents observed the Lincoln pull over to the side of the road. RIOS-COLON exited the vehicle, crossed the street carrying a newspaper, and entered the Merengue Restaurant at 170 Blue Hill

_____

[3] Massachusetts Registration K70828 is registered to Jose A. Collado at 124 Babcock Street, Apartment 5A, Brookline, Massachusetts.

9

Avenue, Dorchester, Massachusetts. At approximately 3:36 p.m., surveillance agents observed RIOS-COLON exit the Merengue Restaurant and reenter the Lincoln, which pulled back into traffic.

22. Surveillance continued to follow the Lincoln through several side streets before it pulled over near 39 Schuyler Street at approximately 3:40 p.m., when the balding Hispanic male exited the vehicle and entered 39 Schuyler Street. Surveillance agents then followed the Lincoln to Blue Hill Avenue, where it pulled over at the corner of Blue Hill Avenue and Pasadena Avenue, across the street from 534A Blue Hill Avenue.[4] The driver and RIOS-COLON then exited the Lincoln, at which point surveillance agents observed the driver walk toward Blue Hill Avenue, but lost sight of RIOS-COLON. Surveillance remained on the Lincoln until approximately 4:15 p.m., at which time surveillance was discontinued.

23. Analysis by the DEA Northeast Regional Laboratory determined that the substance that RIOS-COLON had delivered to the UC on September 2, 2004 consisted of 10.3 grams of heroin.

---

[4] Massachusetts Registry of Motor Vehicle records show that Jose Collado, to whom the Lincoln was registered, had previously used 534A Blue Hill Avenue, Apartment B, Boston, Massachusetts, as an address on his driver's license.

10

## **September 28, 2004 Transaction**

24.  On September 23, 2004, at approximately 3:00 p.m., the UC received a telephone call from RIOS-COLON, who asked the UC why he had not contacted RIOS-COLON to arrange a purchase of heroin that week.  The UC responded that he was not working in Boston that week and assumed that RIOS-COLON would not make a delivery to Portsmouth, New Hampshire.  RIOS-COLON asked the UC if he wanted to meet the following week.  The UC replied that he would, in fact, like to meet the following week, but stated that he wanted more than 20 grams of heroin.  RIOS-COLON stated that it was possible that he could deliver 20 grams on Monday (September 27, 2004) and another 20 grams on Tuesday (September 28, 2004).  The UC told RIOS-COLON that he would call him on Sunday evening (September 26, 2004) to confirm.

25.  On September 26, 2004, at approximately 9:30 p.m., the UC placed an unrecorded telephone call to RIOS-COLON at (617) 905-2489.  The UC stated that he was not working in Boston on Monday, September 27, 2004, but would be in Boston on Tuesday, September 28, 2004.  In response, RIOS-COLON asked the UC if he wanted 40 grams of heroin on September 28th.  The UC stated that he only had approximately \$2800.00 and could not pay for 40 grams of heroin.  RIOS-COLON replied that he could deliver 30 grams of

11

heroin for $2700.00. The UC told RIOS-COLON that he would call him on Tuesday, September 28, 2004, at 11:00 a.m.

26. On September 27, 2004, the UC spoke with RIOS-COLON to arrange for the purchase of 30 grams of heroin for $2700.00 at the Back Bay MBTA station on Dartmouth Street, Boston, Massachusetts.

27. On September 28, 2004, the UC placed several consensually recorded calls to RIOS-COLON to confirm their plan to meet at the Back Bay MBTA station that afternoon. During these calls, RIOS-COLON and the UC agreed to meet at the MBTA station at approximately 3:15 p.m.

28. Prior to the meeting, the UC was given a concealed transmitter and $2700.00 in serialized funds.

29. At approximately 3:20 p.m., surveillance was established in the vicinity of the Back Bay MBTA station in anticipation of the purchase of 30 grams of heroin by the UC from RIOS-COLON.

30. At approximately 3:26 p.m., I followed the UC's vehicle to Dartmouth Street and observed the UC park in the vicinity of the Back Bay MBTA station. Upon parking the vehicle, the UC saw RIOS-COLON to his right. RIOS-COLON approached the UC's vehicle and entered it, at which point the UC began driving in an easterly direction on Dartmouth Street. As the UC drove,

12

he observed RIOS-COLON reach into his left pants pocket and remove an item. RIOS-COLON then handed the UC a small package wrapped in a white napkin and clear adhesive tape, purported to be heroin. In return, the UC handed RIOS-COLON $2700.00 of serialized funds. RIOS-COLON asked the UC if all of the money was there. The UC responded that the full $2700.00 was, in fact, there. RIOS-COLON began counting the money, but stopped, stating that he did not need to count it because he trusted the UC. At this point, RIOS-COLON exited the UC's vehicle.

31.    While this exchange took place, surveillance followed the UC's vehicle, which turned outbound onto Columbus Avenue, then performed a U-turn on Columbus Avenue and drove back toward Dartmouth Street. I observed the UC's vehicle turn onto Dartmouth Street and stop in front of the Back Bay MBTA station at approximately 3:28 p.m. At this time, I observed a Hispanic male wearing a red shirt and blue jeans (who was later identified as RIOS-COLON) exit the UC's vehicle. I also observed RIOS-COLON cross Dartmouth Street and run toward Columbus Avenue.

32.    Surveillance agents continued to monitor RIOS-COLON as he proceeded down Columbus Avenue. Surveillance agents observed RIOS-COLON walk outbound on Columbus Avenue while talking on a cell phone. At approximately 3:33 p.m., surveillance observed RIOS-COLON enter the doorway of 375

13

Columbus Avenue, where he stood as he spoke on the cell phone and looked up and down the street. Approximately one (1) minute later, surveillance observed RIOS-COLON approach a green 1999 Dodge Caravan bearing a Massachusetts Registration 61EA12[5] and a hood that was black in color and appeared to have been replaced. Surveillance agents watched RIOS-COLON enter the Caravan, which drove outbound on Columbus Avenue, made a U-turn, and proceeded to Dartmouth Street, where it parked just prior to the Back Bay MBTA station. Surveillance agents observed the driver of the Caravan to be a light-skinned male with dark hair and light facial hair.

33. A few minutes later (at approximately 3:39 p.m. on September 28, 2004), surveillance agents observed the Caravan make a U-turn on Dartmouth Street, drive outbound on Columbus Avenue, turn down a side street, then turn again to proceed outbound on Tremont Street in Boston, Massachusetts. Surveillance followed the Caravan to the vicinity of Centre Street and Dimmock Street in Roxbury, Massachusetts, where the surveillance agents lost sight of the vehicle in traffic.

---

[5] Massachusetts Registration 61EA12 is registered to Abdiel P. Pizarro at 8 Damon Place, Apartment 3, Hyde Park, Massachusetts.

34.   Analysis by the DEA Northeast Regional Laboratory determined that the substance that RIOS-COLON had sold to the UC on September 28, 2004, consisted of 29.2 grams of heroin.

### December 16, 2004 Transaction

35.   On December 15, 2004, at approximately 10:56 a.m., the UC placed a consensually recorded telephone call to RIOS-COLON at (617) 905-2489.  An unidentified male answered the cell phone, and gave the phone to RIOS-COLON after the UC identified himself as "Paul."  RIOS-COLON answered the phone and stated that he could call the UC back later.

36.   At   approximately   1:35   p.m.   that   afternoon (December 15, 2004), the UC received a telephone call from RIOS-COLON from telephone number (617) 372-2135.[6]  RIOS-COLON told the UC that he should no longer contact him at (617) 905-2489, then asked the UC what he needed.  RIOS-COLON and the UC arranged to meet the following day, December 16, 2004, for the purchase of 30 grams of heroin from RIOS-COLON by the UC.  The UC stated that he had "27," meaning $2700.00, and asked RIOS-COLON where he wanted to meet.  RIOS-COLON responded that he wanted to meet at the same

---

[6] An administrative subpoena to T-Mobile USA, Inc., showed that the cell phone number (617) 372-2135 is subscribed to Luis G. RIOS-COLON, with a year of birth of 1978, a residential address of 17 Creesy Street, Apartment 6, Marblehead, Massachusetts, and a contact telephone number of (617) 541-4774.

place (the Back Bay MBTA station). RIOS-COLON told the UC that he would be waiting for him in the mall (the Copley Place Mall).

37. Prior to the meeting, the UC was given a concealed video and audio transmitter and $2700.00 in serialized funds.

38. On December 16, 2004, at approximately 11:30 a.m., surveillance was established in the vicinity of the Back Bay MBTA station in anticipation of the purchase of 30 grams of heroin by the UC from RIOS-COLON. At approximately 1:02 p.m., surveillance observed a blue 2003 GMC Sierra pickup truck occupied by two (2) Hispanic males at the corner of Columbus Avenue and Dartmouth Street. Surveillance observed the Sierra bearing a Massachusetts Registration 49ZT06[7] as it turned onto Dartmouth Street and entered the parking garage at 130 Dartmouth street. At this time, surveillance observed the driver to be RIOS-COLON, who was talking on a cell phone, and another Hispanic male in the passenger seat.

39. About 30 seconds later, the UC called me by telephone and advised that he had just received a telephone call from RIOS-COLON, who said that he was now at the Back Bay MBTA station. At approximately 1:05 p.m., surveillance observed RIOS-COLON, wearing a black hooded jacket and jeans, and another

---

[7] Massachusetts Registration 649ZT06 is registered to Luis Mejia at 61 Day Street, Jamaica Plain, Massachusetts.

16

Hispanic male, wearing a dark colored jacket, exit the parking garage through a side door. Surveillance agents observed RIOS-COLON walk toward a cab stand across from the MBTA station, while the other male walked toward the Copley Place Mall.

40.    At approximately 1:15 p.m., the UC parked his vehicle on Dartmouth Street and observed RIOS-COLON approach him and enter the vehicle. The UC drove the vehicle in an easterly direction on Dartmouth Street. The UC observed RIOS-COLON reach into his coat pocket and remove an item. RIOS-COLON then handed a white envelope to the UC. The UC opened the envelope, which contained another envelope and a white napkin, which contained three (3) cylindrical objects purported to be heroin. The UC then handed $2700.00 in serialized funds to RIOS-COLON. The UC asked RIOS-COLON if the heroin was as good as the last heroin that RIOS-COLON sold to him. RIOS-COLON responded that this heroin was better. The UC then asked RIOS-COLON about his old cell phone number, (617) 905-2489. RIOS-COLON stated that he gave that cell phone to his cousin. At this point, the UC returned to the vicinity of the Back Bay MBTA station, where RIOS-COLON exited the vehicle.

41.    Shortly after observing the UC drop off RIOS-COLON at the MBTA station, surveillance observed the Sierra exit the parking garage at 130 Dartmouth Street and turn toward Columbus

17

Avenue. At approximately 1:37 p.m., surveillance observed the Sierra stop in front of 61 Day Street, Jamaica Plain, Massachusetts. RIOS-COLON and the other male exited the Sierra and entered the driveway of 61 Day Street. After opening a metal gate at the end of the driveway, RIOS-COLON and the other male attempted to move a big screen television out of the bed of the Sierra. Shortly thereafter, surveillance observed RIOS-COLON leave 61 Day Street in the Sierra and drive toward a gas station on Centre Street, Jamaica Plain, Massachusetts. Surveillance lost sight of RIOS-COLON in the Sierra after he pulled into traffic on Centre Street.

42. Analysis by the DEA Northeast Regional Laboratory determined that the substance that RIOS-COLON had sold on December 16, 2004 consisted of 29.5 grams of heroin.

### February 9, 2005 Transaction

43. On January 30, 2005, at approximately 4:37 p.m., the UC placed a consensually recorded call to RIOS-COLON at (617) 372-2135. RIOS-COLON and the UC agreed to meet in the coming week for the purchase of 30 grams of heroin for $2700.00 from RIOS-COLON by the UC.

44. On February 9, 2005, at approximately 11:10 a.m., surveillance was established on 61 Day Street, Jamaica Plain, Massachusetts.

18

45.   Approximately ten minutes later, the UC placed a consensually recorded call to RIOS-COLON to confirm their plans for the purchase of 30 grams of heroin for $2700.00.

46.   At approximately 12:15 p.m., surveillance was established on the Back Bay MBTA station on Dartmouth Street, Boston, Massachusetts.

47.   At approximately 1:05 p.m., surveillance observed RIOS-COLON, wearing a black sweatshirt and jeans, walk from the direction of the parking garage on Dartmouth Street toward the UC's vehicle, which was parked on Dartmouth Street near the Back Bay MBTA station.   RIOS-COLON approached the UC's vehicle and entered it.   As the UC began to drive in an easterly direction on Dartmouth Street, he asked RIOS-COLON if he had the heroin.   RIOS-COLON reached into his coat pocket and removed an item, which he handed to the UC.   The UC looked at the item, which was wrapped in black plastic and contained a clear plastic baggie.   The baggie contained approximately six (6) cylindrical objects purported to be heroin.   The UC then handed RIOS-COLON $2700.00 in serialized funds.

48.   During the meeting, RIOS-COLON asked the UC if he could use some cocaine.   The UC responded that he had no way of getting rid of it.   He then asked RIOS-COLON if it was powder or cooked cocaine.   RIOS-COLON told the UC that he could supply him

19

with either one.   The UC stated that he knew an Irishman that sold cocaine, and asked RIOS-COLON how much money he charged for one (1) ounce of cocaine.   RIOS-COLON replied that he charges $1000.00 per ounce of powder or crack cocaine.

49.   After discussing the cocaine, the UC told RIOS-COLON that he would be ready to meet with RIOS-COLON next week to purchase another 30 grams of heroin.   RIOS-COLON asked the UC if he would like to purchase 50 grams next week because the quality of the heroin was really good.   The UC responded that it would likely take him a little longer to obtain the funds to purchase 50 grams of heroin.   RIOS-COLON replied that he would deliver 30 grams of heroin instead.   The UC then returned to the vicinity of the Back Bay MBTA station and RIOS-COLON exited the vehicle.

50.   Surveillance observed RIOS-COLON exit the UC's vehicle on Dartmouth Street.   Surveillance then observed RIOS-COLON enter the Copley Place Mall.   At approximately 1:18 p.m., RIOS-COLON exited the parking garage on Dartmouth Street, driving a black 2000 Ford Taurus, bearing Massachusetts Registration 94TM49.[8]   RIOS-COLON turned onto Tremont Street, then onto Aguadilla Street, where RIOS-COLON drove into a parking area. Shortly   thereafter,   the   Taurus   was   lost   from   sight.

---

[8] Massachusetts Registration 94TM49 is registered to Alfredo Melendez at 61 Day Street, Apartment 1, Jamaica Plain, Massachusetts.

Approximately one (1) minute later, the Taurus reappeared on West Dartmouth Street and was followed to the South Shore Plaza in Braintree, Massachusetts.

51.     Surveillance observed RIOS-COLON arrive at the South Shore Plaza at approximately 1:45 p.m. on February 9, 2004. Surveillance observed RIOS-COLON circle through the parking lot, then exit the South Shore Plaza lot. Surveillance followed RIOS-COLON to Route 93-South onto Rout 95-South at approximately 1:50 p.m. At approximately 2:10 p.m., I instructed the UC to place a telephone call to RIOS-COLON. The UC spoke with RIOS-COLON at that time. At approximately 2:12 p.m., the UC called me back and advised that RIOS-COLON had observed surveillance vehicles and was extremely nervous. Surveillance was terminated at this time.

52.     Analysis by the DEA Northeast Regional Laboratory determined that the substance that RIOS-COLON had sold on February 9, 2005, consisted of 29.8 grams of heroin.

53.     On February 22, 2005, RIOS-COLON called the UC and advised that he is leaving, and that his cousin will be taking over his business. RIOS-COLON told the UC that they should therefore arrange a meeting at which RIOS-COLON would introduce the UC to his cousin. RIOS-COLON advised the UC that it should appear at this meeting without the funds for the heroin that RIOS-COLON had agreed to sell to the UC because the sole purpose

21

of this meeting is to introduce the UC to RIOS-COLON's cousin, and not to complete the 50-gram heroin deal that they had discussed.

### VI.   CONCLUSION

54. Based on all the foregoing, I submit there is probable cause to believe **LUIS RIOS-COLON** has possessed with intent to distribute and distributed a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Dated this 28th day of February, 2005.

Matthew M. Deignan
Special Agent, United States
Drug Enforcement Administration

Sworn to and subscribed to before me in Boston, Massachusetts, this 28th day of February, 2005.

JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

22

✎JS 45  (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:**  Boston _____     **Category No.** I _____     **Investigating Agency** DEA _____

**City**   Boston _____          **Related Case Information:**

**County**    Suffolk _____        Superseding Ind./ Inf. _____     Case No. _____
                                        Same Defendant _____     New Defendant _____
                                        Magistrate Judge Case Number   _____
                                        Search Warrant Case Number   _____
                                        R 20/R 40 from District of   _____

**Defendant Information:**

Defendant Name   Luis Rios-Colon _____          Juvenile    ☐ Yes    ☒ No

Alias Name    Junior _____

Address    17 Creesy Street, Marblehead, MA _____

Birth date (Year only):   1978    SSN (last 4 #):   5984   Sex  M  Race: _____   Nationality: _____

**Defense Counsel if known:** _____          **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA**  Lisa M. Asiaf _____          **Bar Number if applicable**  634636

**Interpreter:**    ☐ Yes ☒ No          **List language and/or dialect:**    English _____

**Matter to be SEALED:**    ☒ Yes    ☐ No

         ☒ Warrant Requested         ☒ Regular Process          ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody as** _____ in _____ .
☐ **Already in State Custody** _____    ☐ Serving Sentence    ☐ Awaiting Trial
☐ **On Pretrial Release:   Ordered by** _____ on _____

**Charging Document:**    ☒ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:**    ☐ Petty _____    ☐ Misdemeanor _____    ☒ Felony _____

**Continue on Page 2 for Entry of U.S.C. Citations**

☒      I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
       accurately set forth above.

**Date:   February 28, 2005**       **Signature of AUSA:**    Lisa M. Asiaf  _Lisa M. Asiaf_

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant      Luis Rios-Colon** _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1   18 U.S.C. §841(a)(1) | Distribution of heroin | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**